IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

THE ESTATE OF SAMUEL REYES, deceased,
by Samuel Reyes, Jr.,  the duly Court ordered,
designated, and appointed Administrator of the
estate of Samuel Reyes, ANA O. LOPEZ, mother
of Samuel Reyes, deceased

    PLAINTIFF

    vs

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE OFFICER-
SERGEANT "JOHN/MARY DOE" individually
 and in his/her official capacity, NEW YORK
CITY POLICE OFFICERS "JOE/JOAN SMITH"
#'s 1, 2, 3, *et al.*, individually and in their official
capacities, NEW YORK CITY POLICE
OFFICER- CAPTAIN ANTHONY PIAZZA,
individually and in his official capacity, NEW
YORK CITY POLICE OFFICER-CAPTAIN
KEITH WALTON, individually and in his official
capacity, NEW YORK CITY POLICE OFFICER-
LIEUTENANT JAVIER VALENTIN, individually
and in his official capacity, NEW YORK CITY
POLICE OFFICER-SERGEANT RUTH SHARMA,
individually and in her official capacity, NEW
YORK CITY POLICE OFFICER-SERGEANT
ERIC CARRICATO, individually and in his
official capacity, and NEW YORK CITY POLICE
COMMISSIONER WILLIAM BRATTON,
individually and in his official capacity,

    DEFENDANTS

_____

*CIVIL NO.*_____
(JURY TRIAL)

## I.  INTRODUCTION

1.  This is an action in which the Plaintiffs seek relief for the violation of their rights

as guaranteed to each of them, respectively, under the laws and Constitution of the United

States; and, as well under the laws and Constitution of the State of New York.

2.   Plaintiffs seek monetary damages and such other relief, including injunctive relief and declaratory relief (if appropriate), as may be in the interest of justice and as may be required to assure that each of the Plaintiffs secure full and complete relief and justice for the violation of their respective rights.

3.   This litigation arises out of the death of Samuel Reyes on November 11, 2015 while he was in the custody of the New York City Police Department both at its 49th Precinct facility which is located in the Morris Park community of the City of New York, the County of the Bronx, and the State of New York; and, as well, while he was in the custody of the New York City Police Department at the Jacobi Medical Center; and all associated therewith while he was in custody and subsequent to his expiration on November 13, 2015.

4.   The Office of the Chief Medical Examiner of the City of New York City concluded in its February 23, 2016 dated filed, final *Report of Autopsy* relating to the November 11, 2015 death of Samuel Reyes in a holding cell while he was in the custody of the New York City Police Department at its 49th Precinct facility, City of New York, County of the Bronx, State of New York, that Samuel Reyes died as a result of "hanging" by "suicide".

5.   Samuel Reyes was arrested by New York City police officers on November 10, 2015; and he was transported in the custody of said New York City police officers to the New York City Police Department's 49th Precinct facility which is located at 2121 Eastchester Road in the Morris Park community of the City of New York, the County of the Bronx, and the State of New York.

6. Samuel Reyes was presented before the front desk in the 49th Precinct facility where he was processed and "booked" when brought into the 49th Precinct facility; and, thereafter,  he was placed in a holding cell at the 49th Precinct facility, one of two holding cells which were directly across from the 49th Precinct's front desk and approximately twenty five to thirty feet from that front desk; and  which holding cells, including the one in which Samuel Reyes was being detained, were within the eye sight of the individual New York City police officer who is assigned to the front desk location in the 49th Precinct facility and who is designated to perform all of the duties and functions of the 49th Precinct facility front desk officer, including the over-sight and supervision and monitoring of individuals being detained in the holding cells.

7. The holding cell, in which Samuel Reyes was placed, was within the direct eyesight of the New York City Police Department officer assigned to the front desk location in the New York City Police Department's 49th Precinct facility.

8.  It is believed that Samuel Reyes was being detained in the holding cell at the New York City Police Department's 49th Precinct facility while awaiting transfer to the custody of federal authorities.

9.  It is believed that Samuel Reyes was being detained in what what is described a pre-arraignment status.

10.  At or about 6:00 P.M. on November 11, 2015, Samuel Reyes was found hanging from a bar inside of a holding cell at the New York City Police Department's 49th Precinct facility which holding cell was one of two holding cells approximately twenty five to thirty feet directly across from the front desk in the New York City Police Department's 49th Precinct facility; and both of which were within direct eyesight of the

New York City police officer assigned to the front desk to perform the duties and functions of the front desk officer including the monitoring of any and all individuals detained in the holding cells, among them, Samuel Reyes.

11.  The New York City police officer, who was assigned the front desk for that particular tour of duty, was not present at the New York City Police Department's 49th Precinct facility front desk assignment when Samuel Reyes was found hanging in the holding cell directly across from the New York City Police Department's 49th Precinct front desk and within the direct eye-sight of the New York City police officer who should have been at his/her assignment at the front desk; but rather, it is believed, the New York City police officer was absent from his/her assignment and was not performing the duties and functions of the 49th Precinct facility front desk assignment among those duties and functions being the supervision and monitoring of the holding cell and the safe-guarding of any and all individuals detained and held in custody within the holding cell, among them Samuel Reyes.

12.  The City of New York and its agents and employees had a "special relationship" with and to Samuel Reyes as a consequence of his pre-arraignment custodial detention and confinement in a holding cell at the New York City Police Department's 49th Precinct facility; and, as well and inter-related thereto and associated therewith, they had a special relationship with the Reyes family members including among them his mother, Plaintiff Ana O. Lopez.

13.  This is an action in which each of the Plaintiffs seeks damages and other relief as deemed to be appropriate, including injunctive relief against some of the named Defendant parties, for the violation of each of the respective Plaintiffs' rights as

guaranteed to them under the laws and Constitution of the United States; and for the violation of each the respective Plaintiffs' rights as guaranteed to them under the laws and Constitution of the State of New York.

## II. JURISDICTION

14. Plaintiffs invoke the jurisdiction of this Court pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 (Supplemental Jurisdiction) in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution; and the laws and Constitution of the State of New York.

15. Plaintiffs also invoke the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which each of the Plaintiffs seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief against certain of the named Defendant parties.

16. On February 8, 2016 the Plaintiffs filed a Notice of Claim with the Office of the Comptroller of the City of New York.

17. On February 19, 2016 the Surrogate's Court of the State of New York, the County of the Bronx, the Honorable Nelida Malave-Gonzalez, Judge of the Bronx County Surrogate's Court, presiding, issued an Order awarding *Limited Letters of Administration* of the estate of Samuel Reyes, deceased, to his son, Samuel Reyes, Jr.

18. On March 11, 2016, the Plaintiffs filed an Amended Notice of Claim.

19.  On March 17, 2016, Samuel Reyes, Jr. appeared and provided testimonies in his capacity as the duly ordered, designated and appointed Administrator of the estate of Samuel Reyes, deceased, at what is known as a 50(h) Municipal Law hearing.

20.  On May 11, 2016, Plaintiff Ana O. Lopez appeared and provided testimonies at what is known as a 50(h) Municipal Law hearing.

21.  Plaintiffs request that the Court invoke pendent claim and pendent party jurisdiction.  The State law claims derive from the same occurrence and transaction which give rise to the federal law claims; and the State law claims have a common nucleus of operative fact with the federally based claims.

22.  This is an action in which Plaintiffs seek relief, per the federal question jurisdiction of this Court, for the violation of their respective rights as guaranteed under the laws and Constitution of the United States; and, per Supplemental Jurisdiction of this Court, for the violation of their respective rights under the laws and Constitution of the State of New York.

23.  Venue lies in the geographic boundaries of this Court because the actions giving rise to the litigation took place within the geographic boundaries of this Court's jurisdiction; because the Defendant parties have offices for doing business within the geographic boundaries of this Court's jurisdiction; because the Plaintiffs presently reside within the geographic boundaries of this Court's jurisdiction and/or resided in the geographic boundaries of this Court's jurisdiction at the time and place that the event which gives rise to the litigation took place; and because the actions, inaction, conduct, policies, practices, customs, standards, protocols, and training (or absence thereof) that

give rise to the litigation event and that are inter-related to the litigation event took place and/or have their origins with the boundaries of this Court's jurisdiction.

## III. THE PARTIES

24.  Plaintiff estate of Samuel Reyes, deceased, is represented by Samuel Reyes, Jr. who is the son of the late Samuel Reyes and who is the duly ordered, designated, and appointed Administrator (with limitations) of the estate of the late Samuel Reyes; the latter of whom was forty nine years old (birth date December 23, 1965) at the time of his untimely, tragic, and unlawful death.

25.  Samuel Reyes, Jr., age thirty four (birth date 12/10/1981), is a Latino-American citizen and the adult son of the late Samuel Reyes.

26.  On February 19, 2016, the Surrogate's Court of the State of New York and the County of the Bronx, the Honorable Nelida Malave-Gonzalez, presiding, issued *Letters of Limited Administration* to Samuel Reyes, Jr. designating him as the Administrator of the estate of Samuel Reyes, deceased (with conditions to that designation as the Administrator).

27.  Pursuant to the provisions and substance of the duly ordered *Letters of Limited Administration* and in his capacity as the duly ordered, designated, and appointed Administrator of the estate of Samuel Reyes, deceased, Samuel Reyes, Jr. was given the limited authority to take all appropriate and necessary steps to institute a litigation on behalf of the estate of Samuel Reyes, deceased, relating to the events out of which the death of Samuel Reyes derive and all associated therewith.

28.  Plaintiff Ana O. Lopez, age seventy seven (birth date 10/10/38), is an American citizen of Dominican national origin; and the mother of Samuel Reyes, deceased.

29.   Plaintiff Samuel Reyes, Jr. resides in the City of New York, the County of the Bronx, and the State of New York; and, likewise, Plaintiff Ana Lopez resides in the City of New York, the County of the Bronx,  and the State of New York.

30.   Prior to his death, Samuel Reyes, a Latino-American citizen, resided in the City of New York, the County of the Bronx, and the State of New York.

31.   Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York; and which is authorized under the laws and Constitution of the State of New York to maintain a police department for the purpose of protecting the welfare of, among others, those who reside in the City of New York; and including, among others, the welfare, safety, and the very life of any person being held and detained in the custody of the New York City Police Department at facilities  which it operates and maintains throughout the City of New York, among them the New York City Police Department's 49th Precinct facility in the Morris Park community of the County of the Bronx, New York; although not limited to the precinct facilities alone but at other facilities, as well, throughout the City of New York where the individual is being maintained in the custody of the New York City Police Department, for example a hospital facility to which the detained individual has been transported for medical care.

32.  Defendants "John/Mary Doe" and "Joe/Joan Smith" #'s 1, 2, 3, *et al*., Anthony Piazza, Keith Walton,  Javier Valentin, Ruth Sharma, and Eric Carricato are New York City line and command police officers and agents and employees of the City of New York.

33.   Defendant "John/Mary Doe" is a New York City police officer-Sergeant who it is believed was assigned to the front desk at the New York City Police Department's   49th Precinct facility during the tour of duty when Samuel Reyes was found hanging from a bar in a holding cell which was proximate to and within the direct eyesight of the front desk in the New York City Police Department's 49th Precinct facility to which police officer-Sergeant "John/Mary Doe" was assigned to perform the duties and functions of the 49th Precinct facility front desk officer; including among those duties and functions the supervision and monitoring of that holding cell and the safe-guarding of the welfare and the very lives of the individuals detained in the holding cell, among them Samuel Reyes during the period of time that he was being detained in the holding cell.

34.   Defendant New York City police officer-Captain  Anthony Piazza was the on-duty Executive Officer of the New York City Police Department's 49th Precinct facility on November 11, 2015 at the relevant times hereinafter described; Defendant New York City police officer-Captain  Keith Walton was the on-duty Commanding Officer of the New York City Police Department's 49th Precinct facility on November 11, 2015 at the relevant times hereinafter described; Defendants New York City police officer-Lieutenant  Javier Valentin, New York City police officer-Sergeant Ruth Sharma, and New York City police officer-Sergeant Eric Carricato were on-duty supervisors/command officers at the New York City Police Department's 49th Precinct facility on November 11, 2015 at the relevant times hereinafter described (and, perhaps, as to one of the police officer-Sergeants, the still unknown front desk Sergeant at the relevant times hereinafter described).

35.  Although the actions, inactions, and conduct of Defendants "John/Mary Doe" , "Joe/Joan Smith" #'s 1, 2, 3, *et al*., Anthony Piazza, Keith Walton, Javier Valentin, Ruth Sharma, and Eric Carricato as described herein were unlawful and wrongful and were a direct and proximate cause of the death of Samuel Reyes and although those actions, inactions, and conduct, individually and collectively, of those Defendants, individually and collectively,  violated the Plaintiffs respective rights as guaranteed under the laws and Constitution of the United States and as otherwise guaranteed under the laws and Constitution of the State of New York, their actions, inactions, and conduct were taken in and during the course of their duties and functions as New York City police officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City police officers and as agents and employees of the City of New York.

36.  Defendants "John/Mary Doe", "Joe/Joan Smith" #'s 1, 2, 3, *et al*.,  Anthony Piazza, Keith Walton, Javier Valentin,  Ruth Sharma, and Eric Carricato are being sued in their individual capacities and in their official capacities; they are being sued for their actions and inactions and conduct related to the event out of which the death of Samuel Reyes, deceased, derives; and, as it is alleged,  their individual and collective actions and inactions  and conduct are directly and proximately  related to, and a cause of, the death of Samuel Reyes, a gruesome death which should not have occurred and which was preventable; and without which their individual and collective actions, inactions, and conduct the gruesome  death of Samuel Reyes would not have occurred.

37.  Defendant William Bratton is the New York City Police Commissioner. He is the chief civilian executive and operating officer of the New York City Police Department

10

and the final policy maker for the Defendant City of New York with respect to the

polices, practices, standards, protocols, and operations of the  New York City Police

Department for and on behalf of the City of New York.

38.  Defendant William Bratton is being sued in his individual and official capacities.

39.  Although the actions, inactions, and conduct of Defendant William Bratton

described herein were unlawful and wrongful, the actions, inactions, and conduct were

taken in and during the course of his duties and functions as the New York City Police

Commissioner and as an employee of the City of New York and incidental to the

otherwise lawful performance of his duties and functions as the New York City Police

Commissioner and as an agent and employees of the City of New York.

40.  Defendants City of New York, "John/Mary Doe", "Joe/Joan Smith" #'s 1, 2, 3, *et

al.*,  Anthony Piazza, Keith Walton,  Javier Valentin, Ruth Sharma, Eric Carricato, and

William Bratton all had and continue to have a "special relationship" with each of the

respective Plaintiffs deriving from and out of the custodial detention of Samuel Reyes

and his death associated therewith; and/or deriving, as well, from the aftermath of the

death of Samuel Reyes and the individual and collective actions, inaction, and conduct of

all or some of the named Defendant parties.

IV. ALLEGATIONS

41.  The claims herein, as described hereinafter, arise out of what the Plaintiffs' believe

was the wrongful and unlawful and unconstitutional death of Samuel Reyes; and all of

the individual and collective Defendants'  actions, inactions, and conduct and the policies

and practices, and customs,  protocols, and training of the Defendant City of New York

that propelled and resulted in and were the proximate cause of the wrongful, unlawful,

and unconstitutional death of Samuel Reyes; and which individual and collective actions, inactions, and conduct and the policies, practices, customs, protocols, and training violated the rights of each of the respective Plaintiffs under the laws and Constitution of the United States and, as well, under the laws and Constitution of the State of New York.

### THE TIME, PLACE, AND CIRCUMSTANCES OF THE CONDUCT WHICH GIVE RISE TO THE CLAIMS

42.  On Tuesday, November 10, 2015, Samuel Reyes, then 49 years of age (birth date 12/23/65), was arrested by New York City police officers in the City of New York, the County of the Bronx, and the State of New York; he was transported to the New York City Police Department's 49th Precinct facility, which is located in the Morris Park neighborhood of the City of New York, the County of the Bronx, and the State of New York; he was processed and "booked" at the front desk of the New York City Police Department's 49th Precinct facility; and, thereafter, he was placed in a holding cell in the New York City Police Department's 49th Precinct facility, a holding cell which was one of two holding cells in the 49th Precinct facility directly across from the front desk of the 49th Precinct facility, approximately twenty five to thirty feet away and within direct eyesight of the New York City Police Department police officer assigned to the front desk to perform the duties and functions of that assignment among them the supervision and monitoring of the holding cells and the safeguarding of the welfare and very life of each and every individual  being detained in the holding cells, including the hold cell in which Samuel Reyes was placed.

43. The 49th Precinct is located at 2121 Eastchester Road in the Morris Park community of the City of New York, the County of the Bronx, and the State of New York.

44. It was alleged that Samuel Reyes had been involved in an armed robbery or robberies in the City of New York, the County of the Bronx, and the State of New York.

45. While in the custody of the New York City Police Department at its 49th Precinct facility, Samuel Reyes was in a pre-arraignment status; he had not yet been formally charged and presented, on any charges, before any court; and it is believed that he was waiting to be transferred from the custody of the New York City Police Department to the custody of federal law enforcement authorities.

46. Samuel Reyes was an American citizen of Puerto Rican national origin.

47. At the time, Samuel Reyes was forty nine (49) years of age.

48. Samuel Reyes's birth date was December 23, 1965.

49. Thereafter, on Wednesday, November 11, 2015, it was reported that, "before 6 P.M.", Samuel Reyes was found unconscious and unresponsive inside of a holding cell at the New York City Police Department's 49th Precinct facility.

50. It was further reported that Samuel Reyes was found in the cell as described at or about "5:55" P.M.

51. When Samuel Reyes was found in the holding cell at the New York City Police Department's 49th Precinct facility (as described) he was hanging from a bar of the holding cell.

52. It is believed that the holding cell, in which Samuel Reyes was detained, was one of two holding cells directly across from the front desk in the 49th Precinct where the

front desk Sergeant (Defendant police officer-Sergeant "John/Mary Doe") was assigned

to perform the duties and functions of the desk Sergeant for the particular tour of duty;

among other duties and functions of which was the duty and function and responsibility

to observe the individuals who were placed in that holding cell across from the front desk

in order to monitor the individuals and to maintain the well being, welfare, and security

and safety of the  individuals who were placed in the holding cells and were in the

custody of the New York City Police Department.

53.  It is believed that the holding cell in which Samuel Reyes was being detained in

custody at New York City Police Department's 49th Precinct facility was within the close

proximity of Defendant police officer –Sergeant "John/Mary Doe's" front desk

assignment (perhaps twenty five feet); and, as it was noted in a investigation document to

which the Plaintiffs have had access, individuals being detained in the holding cell "*can

be easily monitored by the desk officer*."

54.  It is believed that the holding cell was within the direct eye-sight of the Defendant

police officer-Sergeant  "John/Mary Doe" and/or any other individual assigned to that

front desk (in lieu of the assigned Sergeant) to perform duties and functions associated

with that front desk assignment.

55.  According to a report authored by an investigator of the Office of the Chief

Medical Examiner of the City of New York who was deployed to New York City Police

Department's 49th Precinct facility on or about November 14, 2015, "[t]here was a

camera in the [holding] cell area that was directed towards the bathroom next to the

holding cells" although it was "…unknown [to the investigator] if it was recording" at the

time of the incident.

14

56.  On or about November 11, 2015 shortly after Samuel Reyes was found in the holding cell at the 49th Precinct facility, investigators from the Force Investigation Unit of the New York City Police Department went to the 49th Precinct facility.

57.  According to Force Unit investigator-Detective Edwin Gomez's November 15, 2015 dated report, which among other reports were attached to the February 23, 2016 dated filed, final *Report of Autopsy* of the Office of the Chief Medical Examiner of the City of New York, Force Unit investigators observed on November 11, 2015 at the 49th Precinct facility: "there are no cameras in or around the [holding] cell area."

58.  According to a November 19, 2015 dated report authored by investigator-Detective, which also was attached to the February 23, 2016 dated filed, final *Report of Autopsy* of the Office of the Chief Medical Examiner of the City of New York, Defendant 49th Precinct Executive Officer –New York City police officer-Captain Anthony Piazza stated to a Force Unit investigator (Captain Williams) that "…on two separate occasions he walked past the [holding] cells, at 1630 hrs.; and again at 1730 hrs.  On both occasions Mr. Samuel Reyes was lying on the bench and appeared to be sleeping."

59.  It is believed that the observations that were being made by the Executive Officer as described were being made because the persons assigned to the front desk with its associated duties and responsibilities including the responsibilities of  monitoring the holding cells in the proximity and eyesight of the front desk officer was regularly missing from that assignment; thereby necessitating that another command officer, in this case the on duty Executive Officer at the 49th Precinct facility was undertake to infrequently monitor the holding cells and those detained therein.

60.  It is believed that there was an intentional,  shockingly reckless, and deliberately indifferent  officially command condoned custom and practice inside of the 49th Precinct that, rather than monitoring the holding cells at the 49th Precinct on a constant basis as a regularly present front desk officer would do, the holding cells at the 49th Precinct were being monitored, if at all, on a non constant,  infrequent basis; rather than having a constant observation of those being held in the holding cells at the 49th Precinct which were located within the direct eyesight of an officer assigned to the 49th Precinct front desk proximate to the holding cells.

61.  Samuel Reyes was cut down from the bar on which he was found hanging inside the holding cell at New York City Police Department's 49th Precinct facility.

62.  Efforts to revive Samuel Reyes were undertaken but were unsuccessful.

63.  Medical personnel were called to the New York City Police Department's 49th Precinct facility.

64.  Samuel Reyes was transported to the Jacobi Medical Center which is located at 1400 Pelham Parkway South, Bronx, New York across the street from the 49th Precinct.

65.  It is believed that, when Samuel Reyes arrived at the Jacobi Medical Center, he was "brain dead": that, after conducting a CAT scan, "Samuel Reyes had no brain activity"; that he could "not breathe on his own"; and that he was "breathing with the assistance of a respirator" (per a report document to which the Plaintiffs have had access).

66.  Samuel Reyes was placed on a life support system without which he would not have been able to breathe on his own and he would have expired, this notwithstanding

that, for all intent and purposes, Samuel Reyes was in fact "brain dead" while on the life support systems.

67.  On Friday, November 13, 2015, Samuel Reyes expired at the Jacobi Medical Center.

68.  While at the Jacobi Medical Center, Samuel Reyes remained in the custody of the New York City Police Department.

69.  Samuel Reyes was under the guard of New York City police officers who maintained a presence outside of the door of the room in which Samuel Reyes was situated at the Jacobi Medical Center; and who, pursuant to policies, practices, procedures, and protocols of the Defendant City of New York, limited access by members of the Reyes family and others to Samuel Reyes; and who otherwise set conditions related to the access of individuals, other than medical personnel, into the room in which Samuel Reyes lay "brain dead", on life support systems without which he would have expired.

70.  Moreover and because Samuel Reyes was in the custody of the New York City Police Department and because of  policies, practices, protocols, and customs of the New York City Police Department associated with that custody and the training received by New York City Police Department personnel inter-related thereto (for the Defendant City of New York) , Samuel Reyes was shackled and handcuffed to his bed as part of his custodial status, this notwithstanding that he was "brain dead" and this notwithstanding that he was being maintained on a life support system and he was not in any conceivable manner or fashion a threat to flee or a threat to do harm to himself or to anyone else.

71. The latter condition of his custodial status was particularly disgraceful and shameful and, at its core, barbaric and shocking.

72. When the attorneys retained by the Reyes family went to the Jacobi Medical Center on the evening of November 11, 2016 and they observed Samuel Reyes in his shackled and handcuffed custodial status, they were shocked (as had been the Reyes family members when they first observed that condition and were forced to continue to observe such, including among family members Plaintiff Ann Lopez); and the Reyes family attorneys raised concern, outrage, and objection to the New York City Police Department personnel, among them high ranking command and/or management officers, about the fact that, although Samuel Reyes was "brain dead" and on a life support system, he was being shackled and handcuffed to the bed in which he was situated; and, in addition , about the fact that Samuel Reyes's family members were being denied access and/or constrained and limited in their access to Samuel Reyes by New York City police officers; not by Jacobi Medical Center personnel who had imposed no such conditions based on medical concerns or necessities on access by the Reyes family members to Samuel Reyes.

73. In substance, the Reyes family attorneys expressed the view to the then present New York City Police Department personnel that the shackling and handcuffing of Samuel Reyes was not only an affront to the Reyes family members, it was barbaric, shocking and an affront to the very humanity of Samuel Reyes and to his family members including especially and particularly his mother, Plaintiff Ana O. Lopez; and that the limitations on access by the family members was, itself, shocking and an affront to them and to Samuel Reyes (all of them).

74.  Among those with whom the Reyes family attorney spoke  and expressed their shock and outrage about the fact that although Samuel Reyes was "brain dead" and on life support he was nonetheless shackled and handcuffed to the bed in which he was situated was New York City Police Department Deputy Inspector Christopher J. Illone who at the time was the Executive Officer of the Support Services Bureau of the New York City Police Department; and who happened to have arrived at the Jacobi Medical Center when the Reyes family retained attorneys were preparing to leave the Medical Center facility.

75.  Notwithstanding the same, the Samuel Reyes was maintained in that handcuffed and shackled condition until he expired on November 13, 2016; and family members were constrained and limited in their access Samuel Reyes until he expired on November 13, 2016.

76.  Such policy propelled conditions and constraints only served to intentionally and unnecessarily inflict pain and suffering on the Reyes family members including Samuel Reyes's mother, Plaintiff Ana Lopez; and to otherwise interfere with her familial relationship (without any legitimate law enforcement justification for the callous conduct); and otherwise only served as a shocking affront and condition imposed upon Samuel Reyes until he expired on November 13, 2015.

77.  On November 13, 2015 and prior to being informed that Samuel Reyes expired had expired, the Reyes family attorneys wrote to Defendant New York City Police Commissioner William Bratton; and they attached copies of letters which they had sent to: New York State Attorney General/Special Prosecutor for Police matters involving the death of an unarmed individual in police custody, Eric Schneiderman; the New York City

Police Department 49th Precinct, Commander Captain Keith Walton; and New York City Police Department Deputy Inspector Christopher J. Ikone.

78.  Among the things that the Reyes family attorneys stated in their communications was the fact that Samuel Reyes was being shackled and handcuffed to the bed, this notwithstanding that he was "brain dead" and posed absolutely no threat of flight or threat of harm to himself or others; and that the Reyes family members were being limited in their collective access to Samuel Reyes in his room; and, as well, that they were being given a run around as to whether, in fact, anyone or more than one could even gain access to him without first going to the New York City Police Department 49th Precinct facility across the street and obtain permission to do so; a situation which was, as it was under the circumstances with the shackling and handcuffing of Samuel Reyes himself, shocking.

79.  Moreover and as part of those communications, the Reyes family attorneys informed those with whom the attorneys were writing of the fact that, when one of the Reyes family attorneys called the New York City Police Department 49th Precinct facility on November 13, 2015 to address the access issue and the run around that the Reyes family members were receiving from the New York City Police Department personnel – all before the family members and their attorneys were notified that Samuel Reyes had expired on that date, the attorney, himself, got a run around from those in the New York City Police Department 49th Precinct facility who answered the telephone and with whom the attorney was seeking to get information and to address the situation about the 49th Precinct based pre-clearance of access of Reyes family members about which the attorney  had just then been informed.

80.   In their November 13, 2015 dated letter, the Reyes family attorneys stated to the Defendant New York City Police Commissioner William Bratton about the shocking nature of the treatment which the Reyes family members were being accorded and about the shocking nature of the conditions imposed on Samuel Reyes while he was in the custody of the of New York City Police Department at the Jacobi Medical Center:

*"Because of the very, very serious nature of this matter, Ms. Marashi and I, as counsel for the Reyes family, wanted to bring this matter directly to your attention."*

81.   On Saturday, November 14, 2015, an autopsy was performed by the Office of the Chief Medical Examiner of the City of New York New York at its Queens, New York facility.

82.   Representatives of the New York City Police Department were present at and during the autopsy.

83.   A forensic pathologist retained by counsel for the Reyes family was also present at and during the autopsy.

84.   The autopsy was conduct by New York City Assistant Medical Examiner Margaret Prial, M.D.

85.   On November 20, 2015, an initial *Certificate of Death* relating to the death of Samuel Reyes was filed with the New York City Department of Health and Mental Health and Mental Hygiene as a Vital Records Certificate.

86.   Doctor Margaret Prial, who conducted the autopsy, is the name and signature listed and set forth on the *Certificate of Death* as the "certifier" of the "causes and manner" of death of the person described therein—Samuel Reyes.

87.  The initially issued and filed November 20, 2015 dated *Certificate of Death* indicates the date of death as November 13, 2105 at or about 4:56 P.M.

88.  The initially issued and filed November 20, 2015 dated *Certificate of Death* lists the "usual" residence address of Samuel Reyes at a location on Bronx Park East, Bronx, New York where Plaintiff Ana O. Lopez resides.

89.  The initially issued and filed November 20, 2015 dated *Certificate of Death* listed "truck driver" and "transportation" as the "usual occupation" for Samuel Reyes.

90.  The initially issued and filed November 20, 2015 dated *Certificate of Death* described "high school graduate or GED" as the level of the formal "education" that Samuel Reyes possessed as of the time of his death.

91.  The initially issued and filed November 20, 2015 *Certificate of Death* states that, as of the date of the issuance of the *Certificate of Death*, the circumstances as to the cause of the death of Samuel Reyes were "undetermined pending police investigation."

92.  On Friday, November 13, 2015 it was reported by NY1 News that: "The NYPD say Reyes used a piece of cloth from a robe he was wearing to hang himself in his cell."

93.  At or about November 13, 2015, it was  reported that an unidentified New York City Police Department sergeant  (Defendant "John/Mary Doe"), who it is believed was responsible for watching and monitoring the holding cell in which Samuel Reyes was found and who was  responsible for the safe-keeping of those detained in the custody of the New York City Police Department at its 49th Precinct facility while in that holding cell including Samuel Reyes while he was being detained in the custody of the New York City Police Department at its 49th Precinct facility at the time he was found hanging in the holding cell on Wednesday, November 11, 2015 at or about 6:00 P.M.,  had been

placed on "modified duty" by Defendant New York City Police Commissioner William Bratton.

94.  It is believed that  the unidentified Defendant New York City Police Sergeant "John/Mary Doe" remains in that "modified duty" status.

95.  On or about November 17, 2015 it was reported by one Ben Fractenberg in what is believed to be a Morris Park and Park Chester community news publication that Defendant New York City Police Commissioner William Bratton stated:

> "We…have an investigation when they're in our custody for their well being, so I'm very concerned, naturally, that somebody was able to hang himself in one of our cells, a cell that was in view in front of the front desk."

96.  It was reported in the same article that, according to Defendant New York City Police Commissioner Bratton, "the sergeant was supposed to have been working at the front desk at the time…"

97.  It was reported that Defendant New York City Police Commissioner William Bratton made the statements as described above "during an event at the Harvard Club on West 44th Street."

98.  On November 17, 2015, the New York Daily News reported that Defendant "Police Commissioner Bill Bratton confirmed" that "the NYPD sergeant responsible for watching over the 49-year-old robbery suspect who hanged himself in a Bronx police station has been placed on modified assignment."

99.  In the same New York Daily News article, Defendant New York City Police Commissioner William Bratton, in commenting "about prisoner Reyes' suicide attempt inside the 49th Precinct stationhouse in Morris Park on November 11", stated that: "We are concerned that someone is able to hang themselves in our cell."

100.  It is further reported in that article that Defendant New York City Police Commissioner William Bratton said that the sergeant "was responsible for monitoring the prisoner."

101.  It is believed that, as part of the protocols of the Office of the Chief Medical Examiner of the City of New York and the protocols of the New York City Police Department, the Office of the Chief Medical Examiner of the City of New York was provided documents generated by the New York City Police Department as part of an investigation which, shortly after Samuel Reyes was found hanging in the 49th Precinct facility holding cell on November 11, 2016, was commenced by the New York City Police Department Internal Affairs Bureau's Force Investigation Unit into the circumstances surrounding Samuel Reyes's death; and how that could have come about that an individual in a holding cell at a New York City Police Department precinct facility could hang himself without  anyone at the precinct facility knowing that the individual was doing such.

102.  That such could happen, something about which Defendant New York City Police Commissioner William Bratton expressed his "concern," is more than "concerning".

103.  Rather it is sort of shocking!

104.  Actually, it is not sort of shocking.  It is shocking!

105.  Shortly after the report of the hanging of Samuel Reyes in the holding cell at the New York City Police Department's 49th Precinct was reported through the New York City Police Department's chain of a command, an investigation was commenced by the Force Investigation Unit which is believed to be part of the New York City Police Department's Internal Affairs Bureau.

106.  Given the public statements which Defendant New York City Police Officer William Bratton issued about the hanging and his serious concern about such, it is believed that he became aware of the fact of the hanging immediately after it was reported through the chain of command; and that he became directly engaged in addressing the matter as the chief civilian executive of the New York City Police Department who reports directly to the Mayor of the City of New York; and, who, as the chief  civilian executive of the New York  City Police Department, is the final policy maker for the City of New York with respect to the operational policies, practices, customs, and protocols of the New York City Police Department.

107.  A final *Report of Autopsy* of the autopsy conducted by Doctor Margaret Prial on November 14, 2015 on the body of Samuel Reyes was filed on or about February 23, 2016; and associated therewith a final "Certificate of Death" (Amended Certificate of Death) was issued and filed by the Office of the Chief Medical Examiner of the City of New York.

108.   The February 23, 2016 filed, final *Report of Autopsy* of the autopsy conducted by Doctor Margaret Prial on November 14, 2015 on the body of Samuel Reyes concluded that the "Cause of Death" was "hanging"; and that the "Manner of Death" was "suicide".

109.  Attached to the February 23, 2016 filed, final *Report of Autopsy* and made part of the February 23, 2016 filed, final *Report of Autopsy* were documents which it is believed were provided to the Office of the Chief Medical Examiner by the New York City Police Department and which were generated out of and from the Force Investigation Unit's investigation into the circumstances surrounding the death of Samuel Reyes while he was in the custody of the New York City Police Department at its 49th Precinct facility; and

where Samuel Reyes was found hanging inside of a holding cell that was directly across from the front desk in the 49th Precinct facility and in the direct eyesight of Defendant Sergeant "John/Mary Doe" whose duties and functions obligated and required him/her to safeguard those individuals, among them Samuel Reyes, who were being detained therein.

110.  As set forth previously, an investigation was commenced by the Force Unit of the Internal Affairs Bureau of the New York City Police Department into the circumstances surrounding the death of Samuel Reyes when he was found hanging in a holding cell in the custody of the New York City Police Department at its 49th Precinct facility.

111.  As a consequence of the same, New York City Police Department Detectives Salvatore Zambito and Edwin Gomez , among others, took actions ( conducting interviews and otherwise), the substance of which were memorialized in written documents/reports; at least some of which were made part of the final *Report of Autopsy* of the Office of the Chief Medical Examiner of the City of New York  with respect to the death of Samuel Reyes while he was in the custody of the New York City Police Department at its 49th Precinct facility.

112.  The February 23, 2016 filed, final *Report of Autopsy* also included, among other materials, photographs which were taken of and at the New York City Police Department's 49th Precinct facility.

113.  As part of the process of the Office of the Chief New York City Chief Medical Examiner of the City of New York, an investigator from that office was deployed to the New York City Police Department's 49th Precinct facility; and that individual conducted some investigatory functions thereat, the substance of which was memorialized in a

document that was also made a part of the February 23, 2016 filed, final *Report of Autopsy*.

114.  Plaintiffs' attorneys engaged in some limited email and telephone communications with Detectives Zambito and Gomez in or about the end of February and early March, 2016, this after their efforts to get in touch with Detective Zambito in or about December, 2015 were unsuccessful because he never returned the calls of the Reyes family attorneys this notwithstanding the several messages which the attorneys left with a representative in his office that the Reyes family attorneys very much wanted to speak with him about the status of the then pending investigation.

115.  None of the communications by the Plaintiffs' attorneys with Detectives Zambito and Gomez at the end of February and early March, 2016 shed any light whatsoever on anything other than they were participants in the New York City Police Department's investigation into the circumstances surrounding the death of Samuel Reyes while he was in the custody of the New York City Police Department at its 49th Precinct facility, a fact of which the Reyes family attorneys were already aware and had been aware of since shortly after the death of Samuel Reyes.

116.  Plaintiffs' attorneys have not been able to get any sense of anything about the investigation; not even the name of the New York City police officer-Sergeant who was placed on modified duty; an advisement as to whether the investigation has been concluded; not even an advisement of how the process will play out; not even a sense of the time-table for anything.

117.  While the telephone communications with Detectives Zambito and Gomez were professional and courteous, they were frustrating and provided no information whatsoever.

118.  Candidly, the treatment received by the Reyes family and especially and particularly Plaintiff Ana O. Lopez as the mother of Samuel Reyes since the death of Samuel Reyes in the custody of the New York City Police Department at its 49th Precinct facility has been disgraceful and shocking.

119.  Given that the death of an unarmed individual in the custody of the New York City Police Department in a holding cell at its 49th Precinct facility is at the heart of this very serious matter and the investigation of such by the New York City Police Department, the lack of information and the delay in concluding the investigation is very, very problematic and troubling, both in the context of the Plaintiffs' right to know; and, as well, in the context of the public's right to know; and, among other public policy concerns and issues that the death of Samuel Reyes implicates,  the Plaintiffs believe the failure of the Defendant City of New York and the Defendant William Bratton to provide even minimal basic information to the Plaintiffs,  violates what the Plaintiffs' believe  are their  respective constitutionally protected and guaranteed due process rights "to know"; and to know in a  timely manner and fashion.

120.  Toward that end and on or about March 20, 2016, the Plaintiffs, by their attorneys, served a Freedom of Information Law letter-Request with the appropriate information and document Freedom of Information Law (FOIL) Access Officer in the New York City Police Department seeking information from the New York City Department about the underlying event and all associated therewith.

121.   On or about March 28, 2016, the Plaintiffs were advised by the New York City

Police Department Freedom of Information Access Officer that they would not, and

could not, receive any of the information at all, including the name of Defendant Sergeant

"John/Mary Doe" who was placed on the "modified duty" status by Defendant New York

City Police Commissioner William Bratton.

122.   Plaintiffs were informed that they could not receive such because there was a

pending investigation; and, as well, because the Plaintiffs had filed a Notice of Claim.

123.   Plaintiffs were flabbergasted that they could not even receive the name of

Defendant Sergeant "John/Mary Doe" who Defendant New York City Police

Commissioner William Bratton had placed on "modified duty" status as a consequence of

the death of Samuel Reyes while he was in the custody of the New York City Police

Department inside of a holding cell at its 49th Precinct facility.

124.   Moreover, Plaintiffs were, if not flabbergasted,  surprised, if not shocked, that

they were being denied access to every and all documents related to the death of Samuel

Reyes, especially and particularly since they and their attorneys had seen and actually

received some of the documents associated with the investigation and generated by the

investigation and deriving from the investigation since those documents were attached to

the  February 23, 2016 filed, final *Report of Autopsy* prepared and issued by the Office of

the Chief Medical Examiner of the City of New York that addressed the death of Samuel

Reyes; and which final *Report of Autopsy* was duly filed, as required under law,  on

February 23, 2016 (a document purportedly accessible to the public upon proper requests

for such under provisions of the Freedom of Information Law).

125.  Those documents reflected that the investigation was, if not formally concluded, largely/substantially completed; and had been so since shortly after the November, 2015 death of Samuel Reyes.

126.  After all, the circumstances surrounding the death of Samuel Reyes in November, 2015 while he was in a holding cell in the custody of the New York City Police Department at its 49th Precinct facility were, while shocking and disturbing,  not complicated; and, by February 23, 2016, the final *Report of Autopsy* describing the cause and manner of death was itself finalized, complete, and duly filed, a copy of which, with the attached documents, was provided to the Plaintiffs and their attorneys.

127.  Under the circumstances and in the context of the efforts to secure information, to have been denied access to that specific and particular information and documents related to the investigation, including the underlying documents related to the reasons for and actual arrest of Samuel Reyes on November 10, 2015, did not have any rational basis and justification for such.

128.  Not only do the Plaintiffs have a right to know the name of Defendant Sergeant "John/Mary Doe"; but the public has a right to know.

129.  The refusal of the New York City Police Department to deny such to the Plaintiffs was arbitrary and capricious and lacked any legitimate law enforcement or other justification, especially and particularly since,  having already received access to some New York City Police Department investigation documents as attachments to the February 23, 2014 filed, final *Report of Autopsy* related to the death of Samuel Reyes, they were aware of some of the information surrounding the death of  Samuel Reyes including the names of two specific sergeants identified in those documents.

130.  On or about March 3, 2016, the Plaintiffs were informed that the New York City Civilian Complaint Review Board (CCRB), which is ostensibly an independent standing agency of the City of New York separate and apart from the New York City Police Department but inter-related to the activities of the New York City Police Department, closed the efforts, if any, that it undertook related to a Complaint filed with it by a member of the Reyes family shortly after the November 11, 2015 death of Samuel Reyes about the circumstances of the death of Samuel Reyes.

131.  The Plaintiffs' attorneys sought to obtain all information and documents and materials related to the undertaking if any by the CCRB.

132.  On or about March 30, 2016 and in response to their request for access to the materials in the CCRB file related to the matter, the Plaintiffs and their attorneys received very little information and documents and materials from the CCRB, except for the recordings of some telephone communications between the Reyes family member and the CCRB representative regarding the fact of the filing of the Complaint by the Reyes family member with the CCRB.

133.  The Plaintiffs and their attorneys certainly did not receive any investigative materials, if any, associated with the filing of the CCRB Complaint and any subsequent investigatory efforts, if any, undertaken by the CCRB; and they did not receive the identity of Defendant New York City Police Sergeant "John/Mary Doe" who was placed on modified duty status by Defendant New York City Police Commissioner William Bratton; and whose identity it is believed the CCRB would have secured early on after receiving the Complaint about the death of Samuel Reyes from the Reyes family member shortly after the death of Samuel Reyes.

134.  The point in this regard is that the Plaintiffs have received copies of documents that have been generated by the New York City Police Department's investigation; and, therefore, the Plaintiffs do not have any understanding whatsoever, in the context of their constitutionally guaranteed due process rights and/or their statutorily guaranteed rights to know,  why the identity of Defendant New York City Police Sergeant "John/Mary Doe", who has been placed on "modified duty" status by Defendant New York City Police Commissioner William Bratton, has not been provided to them by the New York City Police Department, per their  requests for such information.

135.  Moreover and to the extent that the CCRB itself has identified who the Defendant New York City Police Sergeant "John/Mary Doe" is –in whatever efforts it undertook prior to concluding its investigatory efforts (if any) into the matter, once again the Plaintiffs do not have any understanding whatsoever, in the context of their constitutionally guaranteed due process rights and/or their statutorily guaranteed rights to know,  why the name of Defendant New York City Police Sergeant "John/Mary Doe", who has been placed on "modified duty" status by Defendant New York City Police Commissioner William Bratton, will not be provided to them by the Defendant City of New York through its agencies, per their request for such even if, *arguendo*, some investigatory materials *might* otherwise be with-held.

136.  As to the latter point, moreover, and given that the Plaintiffs have already seen some of the Department's investigatory reports *as part of the New York City Medical Examiner's February 23, 2016 filed,  final Report of Autopsy*, they are, again, perplexed by the action of the New York City Police Department to deny to them in a wholesale and *carte blanche* manner and fashion all  information and documents and materials

related to the circumstances of the death of Samuel Reyes; particularly and especially since they received some New York City Police Department investigation generated information and documents as part of the final February 23, 2016 filed, final *Report of Autopsy* of the New York City Chief Medical Examiner's Office addressing the death of Samuel Reyes while in the custody of the New York City Police Department at its 49th Precinct facility.

137.  In their efforts to secure some sense of redress, vindication, and justice, among which are elements of constitutionally and statutorily guaranteed due process, Plaintiffs' attorneys wrote to New York State Attorney General Eric Schneiderman, in his capacity as the New York State Special Prosecutor for police matters involving the death of unarmed individuals in the custody of police or otherwise as the result of engagement with police officers, on November 13, 2015 immediately after the unarmed Samuel Reyes expired at the Jacobi Medical Center while in the custody of the New York City Police Department at the Jacobi Medical Center.

138.  The Plaintiffs requested that, under the July 8, 2015 dated Executive Order 147 signed by New York State Governor Andrew Cuomo and which designated New York State Attorney General Schneiderman as a Special Prosecutor, the Special Prosecutor's Office undertake to investigate the death of the unarmed Samuel Reyes while he was in the custody of the New York City Police Department at its 49th Precinct facility.

139.  Plaintiffs' attorneys engaged in numerous communications with the Attorney General/Special Prosecutor's Office.

140.  Plaintiffs' attorneys were informed at the end of February/early March 2016, that the Special Prosecutor's Office was declining to investigate the matter (over the

Plaintiffs' protest) based on its assessment that, because of specific language in the Executive Order and inter-related thereto, it did not have jurisdiction to do so under the July 8, 2015 dated Executive Order 147 that created the Office, an assessment which the Plaintiffs strongly disagreed and continue to do so.

141.  The Special Prosecutor's Office also rejected the Plaintiffs' request that the Special Prosecutor's Office seek a modification of the July 8, 2015 dated Executive Order 147 from the Governor to allow it to undertake an investigation into the circumstances of the death of Mr. Reyes (without conceding that it did not have the jurisdiction to do so under the Executive Order in its present form).

142.  In that regard, it is believed the Special Prosecutor's Office had done such in another matter where it determined that the July 8, 2015 dated Executive Order 147 was deficient in whatever respect to allow it to undertake an investigation; and it is believed that the Governor of the State of New York has accommodated the Special Prosecutor's request for the modification; and the Special Prosecutor undertook to do an authorized investigation.

143.  In a matter involving the death of an African American woman who died in the custody of the Mount Vernon, New York Police Department while awaiting arraignment, the Special Prosecutor (on or about July 27, 2015 shortly after the July 8, 2015 Executive Order 147 was signed by the Governor), it is believed that  the Special Prosecutor's Office eventually did an investigation; and although he did not elect to seek an indictment, it nonetheless issued an approximately ninety page report with recommendations related to the subject matter of the investigation and the policies and practices of the Mt. Vernon, New York Police Department implicated in the matter

serving the spirit and mission of the Executive Order and providing the women's family with a sense of due process and justice by exposing to them and to the public all of the information  that the Special Prosecutor's Office had gathered and an independent assessment of  the wrong doing, even if it did not rise to the level of criminal conduct.

144. On April 8, 2016 the Plaintiffs' attorneys transmitted a fourteen page April 8, 2016 dated letter to Defendant New York City Police Commissioner William Bratton (with multiple attachments thereto).

145. The Plaintiffs' attorneys requested that Defendant New York City Police Commissioner William Bratton take action to conclude the investigation, if any, that was on going with respect to the circumstances surrounding the death of Samuel Reyes.

146.  The Plaintiffs' attorneys also requested that Defendant New York City Police Commissioner William Bratton provide to the Plaintiffs some minimal, basic information: the identify of Defendant New York City Police Sergeant "John/Mary Doe"; the status of the investigation, if any; a time-table for conclusion of such if it was still on-going; and what the process would be if the investigation concluded that Defendant New York City Police Sergeant "John/Mary Doe's" conduct was problematic or worse and required action to be taken against him by the Defendant City of New York and Defendant New York City Police Commissioner William Bratton.

147.  On April 18, 2016, the Plaintiffs' attorneys filed an appeal from the March 28, 2016 dated wholesale and *carte blanche* rejection of their March 20, 2016 dated New York State Freedom of Information Law (FOIL) letter-Request for documents, information, and materials related to the death of Samuel Reyes while in the custody of the New York City Police Department at its 49th Precinct facility.

148.  Thereafter, Plaintiffs' attorneys undertook to communicate with persons on the executive staff of the Defendant New York City Police Commissioner William Bratton about the status of the April 8, 2016 letter to him.

149.  Ultimately, the Plaintiffs were treated perfunctorily and without any real concern about what was at stake for the Reyes family members on whose behalf the attorneys were undertaking efforts to obtain some basic information.

150.  Plaintiffs' attorneys were referred to the Legal Bureau of the New York City Police Department.

151.  They spoke with a Sergeant-attorney/supervisor; and, thereafter, the director of the Civil Matters Unit of the Legal Bureau.

152.  Once again, the Plaintiffs were unable to obtain any even basic information: the status of the investigation and/or a time-table for its completion and/or the protocol going forward.

153.  The Plaintiffs' attorneys were not able to even learn whether the Plaintiffs would know the outcome of the investigation; and, if the investigation concluded some wrong-doing by Defendant New York City Police Sergeant "John/Mary Doe" and/or others related to the death of Samuel Reyes, whether they—the Plaintiffs, would even be advised of such; and, if the matter was eventually referred to a hearing room on charges against any New York City Police Department employee, whether they would be given notification of such in order to attend any such proceedings which they were informed are open to the public.

1545.  As was the case previously and notwithstanding their efforts to obtain minimal information to which they were entitled, the Plaintiffs were not informed of the identity of Defendant New York City Police Sergeant "John/Mary Doe".

155.  On April 21, 2016, the Plaintiffs' attorneys hand delivered a fifteen page letter to New York State Governor Andrew Cuomo on April 21, 2016 (with attachments), requesting that, upon the refusal of the Special Prosecutor's Office to undertake an investigation as the substance and spirit and mission of the July 8, 2015 dated Executive Order 147 mandated and required,  the Governor of the State of New York, in the exercise of his powers to faithfully execute the laws and Constitution of the State of New York and to see to it that the laws and Constitution of the State of New York are faithfully enforced by those for whom he is responsible, modify the July 8, 2015 dated Executive Order 147 to allow the New York State-wide Special Prosecutor's Office to conduct an independent investigation into the circumstances surrounding the November 11, 2015 hanging death of Samuel Reyes while he was in the custody of the New York City Police Department in a holding cell  at the Department's 49th Precinct facility in the Morris Park community of the Bronx, New York.

156.  In the April 21, 2016 letter to New York State Governor Cuomo, the Plaintiffs stated:

> "…that, although the death was a suicide death by hanging such did *not* give the Special Prosecutor's Office a basis for avoiding its duties and responsibilities under the July 8, 2015 Executive Order; and that the fact of a finding and/or belief that the death was the result of a "suicide" by "hanging", in and of itself, did not divest or otherwise preclude and/or foreclose or negate jurisdiction; and that it did not negate or foreclose the possibility of potential criminal liability on the part of New York City Police Department personnel.  That is what the investigation was designed to find out; and, if it was determined by and through the investigation undertaken by the Special Prosecutor's Office that there was probable criminal culpability, then to seek out accountability for such by the

presentment of the matter to a grand jury and by a criminal prosecution of the potentially culpable individual(s) at a public trial."

157. The Plaintiffs further stated, moreover, that:

"…whether or not the any investigation of the matter warranted an indictment was beside the point.  The first step toward accountability was to undertake an investigation.   That is what the July 8, 2015 dated Executive Order, which you signed, demanded; and that is what the Reyes family was demanding; and we on the family's behalf.  Moreover and not inconsequentially, that is what we believe the public is entitled to; and that is what why we believe you signed the July 8, 2015 Executive Order."

158. The Governor has not responded to the letter.

159. On May 6, 2016, the Plaintiffs received a response to their appeal to the New York City Police Department FOIL document Access Appeal Officer.

160. For all intent and purposes, their April 18, 2015 dated appeal to him from the March 28, 2015 wholesale and *carte blanche* denial of access to information, documents and materials related to the November, 2015 death of Samuel Reyes while in the custody of the New York City Police Department at its 49th Precinct facility, by the New York City Police Department information Access Officer was affirmed.

161. The Plaintiffs were denied the identity of Defendant New York City Police Sergeant "John/Mary Doe", to which they believe they have a right to know both as a matter of statutory right and as a matter of a Fourteenth Amendment constitutionally guaranteed due process right.

162. The only materials which the Plaintiffs received as a consequence of their internal New York City Police Department processed FOIL appeal were some documents related to the pre-custody arrest of Samuel Reyes and the focus by New York City police officers on Samuel Reyes as a suspect in a robbery or robberies; and some documents related to the actual arrest of Samuel Reyes on November 10, 2015.

163.  The Plaintiffs were not provided any documents related to the circumstances surrounding the November 11, 2015 hanging death of Samuel Reyes in the holding cell at the New York City Police Department's 49th Precinct facility.

164.  Having learned nothing whatsoever from their efforts as described and having heard nothing from Defendant New York City Police Commissioner William Bratton in response to their April 8, 2016 dated letter to him and being rebuffed in every way and by everyone from whom they were seeking information as part of the justice securing odyssey on which they embarked long ago to understand how it was that the preventable hanging death of Samuel Reyes occurred when it could have and should have never happened and when it could have and should have been prevented, the Plaintiffs' attorneys wrote another letter to Defendant New York City Police William Bratton, dated May 10, 2016 (with a copy of the April 8, 2016 letter attached thereto without the exhibits to the latter letter).

165.  In the the May 10, 2016, the Plaintiffs wrote to Defendant New York City Police Commissioner William Bratton:

> "Whatever the reason for Mr. Reyes's custodial status at the 49th Precinct, he was entitled to be safe-guarded –yes, even from a self inflicted hanging (assuming that the New York City Medical Examiner's Office is correct in its assessment), by the members of your force under whose supervision he was entrusted."

166.  Furthermore, in the May 10, 2016 dated letter to Defendant New York City Police Commissioner William Bratton, the Plaintiffs wrote:

> "… the Reyes family members are entitled to courtesy, professionalism, and respect; and they are not receiving such, even by a minimal acknowledgment of receipt of the April 8, 2016 dated letter, not to say the least a substantive response to the very reasonable inquiries that were set forth in that April 8, 2016 dated letter."

167.  There is no reason whatsoever why the investigation into the circumstances surrounding the November 11, 2015 hanging death of Samuel Reyes while he was in a holding cell at the New York City Police Department's 49th Precinct facility drags on, especially and particularly since the event is not complicated; and since the investigation was commenced almost immediately after notification of the hanging was conveyed through the command structure of the New York City Police Department  to the Defendant New York Police Commissioner's offices; and since it appears that, at least as of the February 23, 2016 filed, final *Report of Autopsy*, very little further investigation efforts, if any, were undertaken beyond those which were undertaken and completed almost immediately after the November death (the documentation of which was provided to the Office of the Chief Medical Examiner of the City of New York and attached to its February 23, 2016 filed, final *Report of Autopsy*).

168.  The Reyes family and the Plaintiffs deserve more and better under the Courtesy, Professional and Respect policy of the City of New York and its Police Department; and more importantly they have a  statutory and constitutional right to such; and the public deserves more and better and it too has a right to such.

169.  Moreover there is absolutely no justification for the with-holding of the name of the Defendant New York City police officer- Sergeant "John/Mary Doe" who has been placed on "modified duty" status; and the Plaintiffs have a right to obtain such.

170.  Moreover there is absolutely no justification why the Reyes family and the Plaintiffs cannot otherwise get information, generally, about: the status of the investigation; when it is anticipated that the investigation will conclude, if it has not already been concluded; how the process, will play out when the investigation is

concluded; and a time-table for that process.  All of that information should have been provided; and the Plaintiffs have a right to such.

171.  The November 11, 2015 hanging death of Samuel Reyes while he was in the custody of the New York City Police Department at its 49th Precinct facility was shocking, gruesome, and  both tragic and preventable; and it should not have occurred.

172.  The circumstances around the death of Samuel Reyes and, yes, the responsibility of members of the Defendant City and its New York Department and its agent and employee Defendant New York City Police Department police officer- Sergeant "John/Mary Doe" (among others) for that unnecessary death by hanging/suicide is not complicated matter.

173.  Based on documents which the Plaintiffs have seen, it appears that great deal of the investigation has been conducted and completed; and that most of it was done almost immediately after the death of Samuel Reyes occurred (some of which took place even before Samuel Reyes expired on November 13, 2015).

174.  Certainly, the February 23, 2016 filed, final *Report of Autopsy* and its attached New York City Police Department documents associated therewith and part thereof suggests that there had not been any recent activity on the investigation by the New York City Police Department since the early part of the investigation and up to the February 23, 2016 filed, final *Report of Autopsy*.

175.  The Plaintiffs have a statutory and constitutional right to know basic, non privileged substantive and procedural information as part of fundamental due process; and a right to know such in a timely manner and fashion.

176.  The Defendant City of New York has a special relationship with the individuals whom its Police Department detains, maintains, and holds in custody at its facilities throughout the City of New York including the New York City Police Department's 49th Precinct facility in the Morris Park neighborhood and community of the Bronx, New York; and, when something happens to an individual being held in custody, including the death of an individual, the Defendant City of New York has a special relationship with the family of the individual about the circumstances of the death of the family member.

177.  The Defendant City of New York has the legal responsibility and obligation to protect the security and physical well being and safety of the individuals whom the New York City Police Department detains, maintains, and holds in custody at its facilities throughout the City of New York including the New York City Police Department's 49th Precinct facility in the Bronx, New York; including the legal obligation and responsibility to protect the individual from doing harm to himself or from being harmed by others.

178. The Defendant City of New York has the legal obligation and responsibility to impose only objectively reasonable conditions of restraint on an individual when an individual in its custody is being maintained and detained under its supervision in a "brain dead" condition, on life support and status at a hospital facility to which the individual has been transported and admitted.

179.  The Defendant City of New York has the legal obligation and responsibility to impose only objectively reasonable conditions of restraint on an individual who is in its custody; and which conditions of restraint on the individual have implications for and constrain the members of that individual's immediate family including the members of the immediate family of an individual who is deemed "brain dead" and on a life support

system and who is under the supervision and custody of the New York City Police Department, albeit at a hospital facility, rather than at a precinct facility, to which the individual has been transported because of that individual's medical condition and "brain dead" status (including conditions which limit the access of immediate family members to the room in which the individual is being maintained at the hospital facility including specifically and particularly the mother of the individual).

180.  When an individual dies in the custody of the City of New York at a facility operated and maintained by the New York City Police Department including the New York City Police Department's 49th Precinct facility in the Bronx, New York, the City of New York has a special relationship with the immediate family members of the deceased including and specifically the mother of the deceased.

181.  When an unarmed individual dies by hanging  while in a holding cell and while in the custody of the City of New York at a facility operated and maintained by the New York City Police Department including the New York City Police Department's 49th Precinct facility in the Bronx, New York, the immediate family of the deceased, including specifically and particularly the mother of the deceased, has a reasonable and objective expectation that an investigation into the circumstances surrounding the death of the individual will be initiated immediately by the City of New York and its Police Department; that the investigation will be thorough; *and that the investigation will completed in a timely manner and fashion*.

182.  When an unarmed individual dies by hanging while in a holding cell and while in the custody of the City of New York at a facility operated and maintained by the New York City Police Department including the New York City Police Department's 49th

Precinct facility in the Bronx, New York, the immediate family of the deceased, including specifically and particularly the mother of the deceased, has a reasonable and objective expectation that the City of New York and the New York City Police Department will provide the immediate family including specifically the mother of the deceased at least regular, minimal information about the status of the investigation into the circumstances of the death of the individual while in the custody of the New York City Police Department at a facility operated and maintained by the New York City Police Department for the City of New York.

> POLICY, PRACTICE, CUSTOM AND PROTOCOLS, STANDARDS AND TRAINING INTER-RELATED THERETO AND ASSOCIATED THEREWITH AND ATTACHED TO THE EVENT OUT OF WHICH THIS LITIGATION ARISES

183.  It is believed that, by their actions, inactions, and conduct, New York City police officers (line and command) including Defendants "Joe/Joan Smith"  #'s 1, 2, 3, *et al.* and Defendant New York City police officer-Sergeant "John/Mary Doe" and Defendants Anthony Piazza, Keith Walton, Javier Valentin,  Ruth Sharma, and Eric Carricato, allowed Samuel Reyes, when he was initially processed at the front desk at the New York City Police Department's 49th Precinct facility on November 10, 2015 and thereafter when he was being detained in the holding cell at the New York City Police Department's 49th Precinct, to hold and maintain materials in his possession which, if improperly utilized while he was in the holding cell, placed himself and/or others (if any in the holding cell) at substantial risk to do harm to himself and/or to others with those materials which should not have been allowed to be retained by Samuel Reyes while he was being detained .

184. Defendant New York City police officer-Sergeant "John/Mary Doe" was absent from his/her assigned duties and functions at the front desk in the New York City Police Department's 49th Precinct facility when Samuel Reyes was found hanging from a bar inside of the holding cell at the 49th Precinct facility on November 11, 2015, a holding cell which was approximately twenty five to thirty feet from the front desk and within the direct eyesight of the officer assigned to perform the duties and functions of the front desk officer, among those duties and functions the duty and function of the safeguarding of individuals who are detained in custody within the holding cell at the 49th Precinct facility.

185. It is believed that Defendants "John/Mary Doe", "Joe/Joan Smith" #'s 1, 2, 3, *et al.* , Anthony Piazza, Keith Walton, Javier Valentin, Ruth Sharma, Eric Carricato, as the command officers and supervisors in the New York City Police Department's 49th Precinct facility created and/or tolerated and condoned a policy, practice, custom at the 49th Precinct facility that allowed individuals in a holding cell to retain and maintain materials and objects that posed a danger to the individuals in the holding cell to do harm to themselves and/or to others; and, otherwise, that permitted the front desk to be left vacant of the assigned officer or someone in lieu of the assigned officer so as to leave the holding cells, proximate to the front desk and within direct eyesight of the officer assigned to the front desk, to be un-monitored and thereby to leave those being detained in the holding cells at increased risk to do harm to themselves or to others being detained in custody within the holding cells.

186. Both of those created, tolerated and/or condoned policies, practices, and customs, individually and collectively, propelled the death of Samuel Reyes.

187.  Furthermore, it is believed the policies and practices and customs and protocols of the City of New York and training associated therewith propelled the Defendants to act in a manner and fashion that allowed individuals in a holding cell to retain and maintain materials and objects that posed a danger to the individuals in the holding cell to do harm to themselves and/or to others; and that otherwise allowed the front desk at the New York City Police Department  49th Precinct facility to be left vacant for a period of times during which the holding cells at the Precinct facility were not being monitored, thereby increasing the risk of those individuals being held in the holding cells at the New York City Police Department 49th Precinct facility to do harm to themselves and/or to others.

188.  Such policies and practices of the City of New York and the training associated therewith as described at the 49th Precinct facility is part and parcel of the over-arching grossly inadequate policies and practices and customs and the training associated therewith within the New York City Police Department as a whole at its various precinct facilities throughout the City of New York, thereby increasing the risk of individuals being held in custody in holding cells at those precinct facilities throughout the City of New York to do harm to themselves and/or to others.

189.  The actions, inactions, and conduct of Defendants "Joe/Joan Smith" #'s 1, 2, 3 *et al.* and the actions and inactions and conduct of Defendant New York City police officer-Sergeant "John/Mary Doe" and the actions and inactions and conduct of Defendants Anthony Piazza, Keith Walton,  Javier Valentin, Ruth Sharma, and Eric Carricato were propelled by the policies, practices, customs, protocols, and the training of the City of New York and were a direct and proximate cause of the death of Samuel Reyes by

hanging from a bar of the holding cell across from the front desk in the New York City Police Department's 49th Precinct facility.

190.   As a reflection of the failed and unlawful policies, practices, customs, and protocols and training associated therewith of the City of New York –all of which propelled the hanging death of Samuel Reyes while he was in a holding cell at the New York City Police Department's 49th Precinct facility, it was reported in an article under the by-line of Al Baker and Nate Schweber in a February 1, 2016 edition of the New York Times (entitled *Brooklyn Suicide is Third Hanging in City Holding Cells Since May*) that, within the six month period of the February 1, 2016 date, there were three reported hanging deaths of individuals being held and detained in a holding cell at a New York City Police Department precinct facility in the City of New York, among which was the hanging death of  Samuel Reyes on November 11, 2015 in a holding cell at the New York City Police Department's 49th Precinct facility.

191.  The local New York City Police Department policies and practices and customs and protocols and the training of associated therewith  and the consequences inter-related thereto are part and parcel of the larger nation-wide  local law enforcement policies, practices, customs and protocols and training associated therewith and the consequences inter-related thereto which, according to a December 22, 2015 article  under the by-line of Brandy Zadrozny entitled *Why More Americans are Dying in Holding Cells* and posted on the platform *The Daily Beast*, reflect that "suicide is the leading cause of death in local jails"; that "according to data from the Bureau of Justice Statistics (PDF), since 2000, 4,134 people have taken their own lives while awaiting justice in local jails."

192.  And which, according to the experts, require that on the local level including in
the New York City Police Department, policies and practices and customs and protocols
associated with the detention of individuals in holding cells and the monitoring of them in
holding cells, need to be created and/or made better if they exist at all; and, associated
therewith and inter-related thereto that  on the nation-wide scale and at all of the local
levels of law enforcement, "police need to be trained better to stop it." *Id.*

193.  In that regard is believed that New York City's policies and practices and customs
and protocols and the training of its line and command police officers, including but not
limited to the utilization of  security camera technology for monitoring holding cells in
New York City Police Department precincts, are totally lacking and/or are sorely
inadequate, the result of which propelled the actions and inactions and conduct of the
individually named Defendants herein including the creation of all of the components or
absence of components of the localized  49th Precinct facility monitoring and other
policies and practices and customs and protocols, all of which were the proximate cause
of the death of Samuel Reyes.

194.  It is believed that the unconstitutional and otherwise unlawful actions and
inactions and conduct of the Defendants New York City police officer "Joe/Joan Smith"
#'s 1, 2, 3, *et al*. and of Defendant New York City police officer-Sergeant "John/Mary
Doe" and the actions, inactions, and conduct of Defendants police officers-
supervisors/commanders  Anthony Piazza, Keith Walton, Javier Valentin,  Ruth Sharma,
and Eric Carricato were propelled by the foregoing shocking and/or intentional, reckless,
and deliberately indifferent unconstitutional and otherwise unlawful policies, practices,

customs, protocols, standards and the training or lack thereof inter-related thereto and associated therewith of the Defendant City of New York.

195.  Samuel Reyes was transported to the Jacobi Medical Center across the street from the New York City Police Department's 49th Precinct facility.

196.  Samuel Reyes was brain dead when he arrived at the Jacobi Medical Center.

197.  Samuel Reyes was admitted to the Jacobi Medical Center on the evening of November 11, 2015.

198.  Samuel Reyes was placed on life support machines and was maintained, in his brain dead status, until he expired at the Jacobi Medical Center late on the afternoon of November 13, 2015.

199.  Throughout the period of time that Samuel Reyes was at the Jacobi Medical Center, Samuel Reyes was handcuffed and shackled in the bed in which he was situated in his brain dead status and while he was, throughout, on life support machines until he expired late on the afternoon of November 13, 2015.

200.  Throughout the period of time that Samuel Reyes was at the Jacobi Medical Center, New York City police officers were stationed outside of the room in which Samuel Reyes was situated; and those officers limited access by family members to the room and otherwise set conditions including that, before a family member could access the room where Samuel Reyes was situated, the family members would have to go to the New York City Police Department's 49th Precinct facility across the street; and get authorization to have access to Samuel Reyes.

201.  Samuel Reyes was under the control, supervision, and custody of the New York City Police Department when he was admitted to and confined in a bed at the Jacobi

Medical Center on November 11, 2015 and before he expired at the Jacobi Medical

center late on the afternoon of November 13, 2015.

202.  The conditions described, to which Samuel Reyes was subjected, including his

shackling and handcuffing to the bed in which he was situated this notwithstanding that

he was brain dead and on life support machines, and to which Plaintiff Ana O. Lopez was

subjected when she was forced to observe such and when she was limited in her access to

the room in which Samuel Reyes was situated, were the result of and propelled by New

York City Police Department policies, practices, customs, protocols and standards.

203.  When attorneys for Samuel Reyes and his family members (among them Plaintiff

Ana Lopez) protested the conditions to police officers including a very high ranking

command officer, they were informed that such conditions were mandated by the

policies, practices, customs, protocols, and standards of the New York City Police

Department.

204.  The Plaintiffs, through their attorneys, have undertaken significant efforts to

obtain at the very least some minimal information from the New York City Police

Department about the "investigation" which they have been lead to believe is on-going

with respect to the circumstances surrounding the death of the unarmed Samuel Reyes

while he was in the custody of the New York City Police Department at its 49th Precinct

facility.

205. The efforts of the Plaintiffs' attorneys have extended all the way to the top of the

command structure of the New York City Police Department—right into the Office of the

Defendant New York City Police Commissioner William Bratton; and to Defendant New

York City Police Commissioner Bratton himself.

206.  For all intent and purposes the Plaintiffs have been stone walled on the very basic information which they have sought and continue to seek.

207.  It is believed that the refusal to provide to the Plaintiffs even the minimally basic information that they have sought and continue to seek (aside from the more extensive information they sought and that they are seeking), is propelled by the policies, practices, customs, protocols and standards of the New York City Police Department; and the Plaintiffs  through their representatives were, in substance, informed of such by those with whom they were communicating in order to try and obtain information about the investigation –the status thereof and other relevant information including the name of Defendant New York City police officer-Sergeant "John Doe" who it was  publicly acknowledged by the Defendant New York City Police Commissioner had been placed on a modified duty status because of his/her actions and action related to the death of Samuel Reyes while Samuel Reyes was in a holding cell at the New York City Police Department's 49th Precinct facility.

DAMAGES

208.  The Plaintiffs seek  damages for conscious pain and suffering; damages for the value of life itself; damages for the interference with the familial relationships which the deceased had with the members of his family; damages for the loss of the familial relationship which Plaintiff Ana Lopez had with the deceased, her beloved son; and which the deceased had with his beloved mother; damages for the violation of the respective Plaintiffs' constitutional rights, themselves; and hedonic damages for the joy in life.

209.   The Plaintiffs have not yet set a specific sum of money for the damages since what is the worth of life—it is incalculable and infinite; and to place a value on life itself is surreal. That being said the Plaintiffs believe that the damages are in the multi millions of dollars including compensatory damages and punitive damages for the actions, conduct, policies, practices and training (or lack thereof) which proximately caused the wrongful death of the deceased, Samuel Reyes; and which otherwise interfered with the familial relationships of the respective Plaintiffs, one with the other and together with each other.

210.  Plaintiff Ana Lopez and the deceased, Samuel Reyes, were very close as mother and son; and as son and mother.

211.  Plaintiff Ana Lopez suffered enormous and untold emotional and mental distress and psychological trauma when she was informed that her son, Samuel Reyes, had hung himself in a hold cell in the New York City Police Department's 49th Precinct facility.

212.  Plaintiff Ana  Lopez does not even now comprehend such; and she does not, even now, know whether or not to believe that such could occur or, if it did occur, how it could have occurred while he was in the custody of the New York City Police Department and under their sight and care.

213.  Plaintiff Ana Lopez's pain and suffering has only been intensified by the delay that is attending the so called "investigation" that is supposedly being conducted by the New York City Police Department into the circumstances surrounding the death of her son, Samuel Reyes; and, as well, by the refusal of the New York City Police Department to provide her any information whatsoever and however minimal, about the status of the so called investigation.

214.  Moreover, Plaintiff Ana Lopez's pain and suffering has been further intensified because of the refusal by the New York State-wide Special Prosecutor and/or the New York State Governor to trigger the mechanism available to the New York State-wide Special Prosecutor that requires him to commence an independent investigation into the circumstances surrounding the November 11, 2015 death of Samuel Reyes while the unarmed Samuel Reyes was in the custody of the New York City Police Department at its 49th Precinct facility.

215.  It is believed that at the time that the deceased, Samuel Reyes hung himself from a bar in a holding cell at the New York City Police Department's 49th Precinct and before he became unconscious and what can be described as "brain dead", Plaintiff Samuel Reyes incurred conscious pain and suffering.

CLAIMS

216.  The actions, inactions, and conduct, policies,  practices,  customs,  protocols, and training or absence thereof, individually and collectively,  of each of the Defendant parties, individually and collectively, were shocking,  intentional, reckless, deliberately indifferent and were the direct and proximate result of the death of the Samuel Reyes and the violation of his rights and the rights of Ana Lopez and without which shocking, intentional, reckless, and deliberately indifferent actions, inactions, conduct, policies, practices, customs, protocols, and training or absence thereof, Samuel Reyes would not have died while in the custody of the City of New York at its New York City Police Department's 49th Precinct facility; and the rights of Samuel Reyes and Ana Lopez would not have been violated.

217.  The Plaintiffs assert that the individual and collective Defendant parties'
shocking, intentional, reckless, and deliberately indifferent actions, inaction, conduct,
standards, policies, practices, customs,  protocols and the training related thereto, each
individually and/or together collectively, caused and/or propelled the November 11, 2015
hanging death of Samuel Reyes; that such actions, inaction, conduct, standards, policies,
practices, protocols and the training related thereto, each individually and/or together
collectively, were intentional, shocking, reckless, callous, malicious, deliberately in
different; were the proximate cause of the death of Samuel Reyes; and violated his rights
under the Fourth and Fourteenth Amendment to the United States Constitution and the
Civil rights Act of 1871, 42 U.S.C. Section 1983.

218.  The Plaintiffs assert that the individual and collective Defendant parties' actions,
conduct, standards, policies, practices, protocols and the training related thereto, each
individually and/or together collectively,  interfered with the familial interests of Plaintiff
Ana Lopez, with whom the City of New York had a special relationship, as the mother of
the deceased; that such actions, inaction,  conduct, standards, policies, practices,
protocols, and the training each individually and/or collectively, were intentional,
shocking, reckless, callous, malicious, and deliberately indifferent to her familial
relationship with the deceased;  and, accordingly, violated her rights under the Fourteenth
Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C.
Section 1983.

219.  The Plaintiffs assert that the terms and conditions under which the individual and
collective Defendant parties detained and maintained Samuel Reyes when he was in their
custody under their supervision at the Jacobi Medical Center by shackling and

handcuffing him although he was "brain dead" and being maintained on life support by machines – was intentional, was grotesque, was inhumane, was shocking, was malicious, callous, recklessly indifferent; and violated the Plaintiffs' respective rights, including the rights of Samuel Reyes before he expired on November 13, 2015 under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil rights Act of 1871, 42 U.S.C. Section 1983; and including the rights of Ana Lopez, as the mother of Samuel Reyes, under the Fourteenth Amendment to the United States Constitution (both of whom had special relationships with the Defendant City of New York and its agents and employees).

220. The Plaintiffs assert they have an objectively reasonable expectation that they would be provided at least minimal information about the circumstances surrounding the death of Samuel Reyes and the investigation (a property interest protected and guaranteed under the Due Process Clause of the Fourteenth Amendment); and/or that the refusal to provide them even minimal information about the circumstances surrounding the death of Samuel Reyes and the investigation associated therewith implicates their freedom to live life as best they can since they live now in a dark hole which only reasoned light/information can ameliorate (a liberty interest protected and guaranteed under the Due Process Clause ).

221. The Plaintiffs assert that the refusal of the Defendant William Bratton and the Defendant City of New York to provide them even basic minimal information about the circumstances surrounding the death of Samuel Reyes and the investigation alleged to be taking place associated therewith (including but not necessarily limited to the status of the investigation, a lack of a timely conclusion to the investigation, the process to follow,

the name of the implicated Defendant Sergeant "John Doe") –and the policies, practices, customs, protocols, and standards associated therewith violate their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

222.  The Plaintiffs have no other adequate remedies at law but for the institution of this litigation in order to secure redress, vindication and justice.

## V. CAUSES OF ACTION

### A.  FIRST CAUSE OF ACTION

223.  Plaintiffs reiterate Paragraph #'s 1 through 222 and incorporate such by reference herein.

224.  The rights of Samuel Reyes and/or the estate of Samuel Reyes were violated by the actions, inactions, conduct, standards, policies, practices, customs, protocols, and the training inter-related and associated therewith including those related in all respects to his death itself; to the conditions in which he was maintained in custody at the Jacobi Medical Center; and the failure to timely conclude the investigation into the circumstances surrounding his death; and to provide at least minimal information about the circumstances surrounding his death and the New York City Police Department investigation associated therewith.

225.  Such violated the rights of Samuel Reyes and/or the estate of Samuel Reyes under the Fourth Amendment and under the Due Process Clause and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the Civil rights Act of 1871, 42 U.S.C. Section 1983.

226.  Plaintiff Samuel Reyes and/or the estate of Samuel Reyes suffered injuries and damages for which he/they seek relief in the form monetary damages; and, where appropriate, in the form of a declaratory judgment and/or an injunction.

## B.  SECOND CAUSE OF ACTION

227.  Plaintiffs reiterate Paragraph #'s 1 through 226 and incorporate such by reference herein.

228.  Rights guaranteed to the Plaintiff Samuel Reyes and/or the estate of Samuel Reyes were likewise violated under the laws and Constitution of the State of New York, including rights related to his wrongful death; rights related to the terms and conditions of his custodial confinement; and rights under law to be informed.

229.  Plaintiff Samuel Reyes and/or the estate of Samuel Reyes suffered injuries and damages for which he/they seek relief in the form of monetary damages; and, where appropriate, in the form of a declaratory judgment and/or an injunction.

## C.  THIRD CAUSE OF ACTION

230.  Plaintiffs reiterate Paragraph #'s 1 through 229 and incorporate such by reference herein.

231.  The actions, inactions, conduct, policies, practices, standards, custom, and protocols of the Defendant parties, individually and//or collectively together, violated  the rights of Ana Lopez, including her familial right to a relationship with her son Samuel Reyes and his with her;  her right to have information about the circumstances surrounding the death of her son Samuel Reyes; and her right to have access to her son while he was in custody at the Jacobi Medical Center without unreasonable conditions including but not limited to the condition of having to observe obscene and grotesque

conditions of restraint imposed on her son (his handcuffing and shackling to a bed notwithstanding that he was brain dead and on life support machines).

232.  The rights of Plaintiff Ana Lopez which were violated are guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

233.  Plaintiff Ana Lopez suffered injuries and damages for which she seeks relief in the form of monetary damages; and, if appropriate, relief in the form of a declaratory judgment and/or injunction.

### D.  FOURTH CAUSE OF ACTION

234.  Plaintiffs reiterate Paragraph #'s 1 through 233 and incorporate such by reference herein.

235.  The rights of Plaintiff Ana Lopez were likewise violated under the laws and Constitution of the State of New York, including the intentional infliction of mental distress; and interference with the familial relationship between her and her son; and her right to a timely investigation and conclusion thereof; and the right to have access to information about the death of her son and the circumstances surrounding it.

236.  Plaintiff Ana Lopez suffered injuries and damages; and she seeks relief in the form of monetary damages; and, as well, in the form of a declaratory judgment and/or an injunction.

### E.  FIFTH CAUSE OF ACTION

237.   Plaintiffs reiterate Paragraph #'s 1 through 236 and incorporate such by reference herein.

238.  The Defendant City of New York has recklessly and with deliberate indifference failed to provide standards and policies and practices and customs and protocols and training inter-related thereto and associated therewith relating to the actions of its police officers (line and supervisory), the result of which propelled the unconstitutional Defendant New York City police officers' actions, inaction, and conduct described and challenged herein.

239.  Those policies, practices, and customs, protocols, standards  and the training inter-related thereto and associated therewith –and/or the lack of such policies, practices, customs, standards, protocols and training, violated the Plaintiffs' respective rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

240.  Plaintiffs suffered injuries and damages; and they seek relief in the form of monetary damages and/or in the form of a declaratory judgment and/or an injunction.

## F.  SIXTH CAUSE OF ACTION

241.  The Plaintiffs reiterate Paragraph #'s 1 through 240 and incorporates such by reference herein.

242.  The individual and the collective  Defendant parties actions and conduct and policies, practices and customs, protocols, standards and training inter-related thereto and associated therewith –or lack thereof -- were negligent and violated Plaintiffs' rights under the laws and Constitution of the State of New York.

243.  Plaintiffs suffered injuries and damages; and they seek relief in the form of monetary damages and, as well and if appropriate, in the form of a declaratory judgment and/or an injunction

## G. SEVENTH CAUSE OF ACTION

244.  Plaintiffs reiterate Paragraph #'s 1 through 243 and incorporate such by reference herein.

245.  Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant City of New York, the Defendant City of New York is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York, pursuant to the doctrine of *respondeat superior*.

246.  Plaintiffs suffered injuries and damages.

## H.  EIGHTH CAUSE OF ACTION

247.  Plaintiffs reiterate Paragraph #'s 1 through 246 and incorporate such by reference herein.

248.  When the Defendant City of New York represents its police officers in federal civil rights litigations alleging unconstitutional actions by its officers (which representation takes place it is believed in 99.99 percent if not more of the situations where a police officer seeks representation), it is believed that it ordinarily and uniformly and as a matter of policy and practice indemnifies its police officers for any award of both punitive damages and compensatory damages.

249.  It is believed that the police officer-employee executes a retainer-indemnification and representation letter which requires the police officer-employee, in return for indemnification, to subordinate his or her interests to the interest of his/her employer and indemnifier –the Defendant City of New York.

250.  It is believed, moreover, that, when a judgment is obtained against a New York City police officers for an officer's violation of an individual's federally guaranteed Constitutional and civil rights and where the police officer has been represented by the New York City Corporation Counsel's office and where the City of New York has paid the judgment of damages (compensatory and/or punitive damages), the police officer almost never has been subjected to a New York City Police Department disciplinary hearing and/or the imposition of any discipline whatsoever; and it is believed that, when a settlement has been made in such a litigation, the police officer ordinarily is never even informed of such.

251.  It is believed, moreover, that when a judgment is obtained against a New York City police officer being represented by the New York City's Corporation Counsel's office for the violation of an individual's constitutional and civil rights, the City of New York takes no action whatsoever to address such and discipline and/or train-retrain the police officer in any form or fashion for his or her unlawful and unconstitutional conduct; and/or the City does not change those policies and practices that propelled said conduct.

252.  The City of New York is, under the circumstances, the real party in interest.

253.  The named individual Defendants are employees and agents of the City of New York and their actions, inaction, and conduct, as described, were taken in the course of their duties and functions as New York City police officers and, in their capacities as such, as agents and employees of the Defendant City of New York.

254.  The individual and collective Defendant New York City police officers' actions and in actions and conduct, while unlawful and unconstitutional, nonetheless were

actions, inactions, and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the Defendant City of New York.

255.   Plaintiffs are entitled to recover against the Defendant City of New York for the conduct of its named Defendant police officers *under the federal claim jurisdiction* pursuant to the doctrine of *respondeat superior*.

256.   Plaintiffs suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke the jurisdiction of this Court.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems is in the interest of justice.

DATED: New York, New York
        June 23, 2016

Respectfully submitted,

/s/*P. Jenny Marashi*_____
P. JENNY MARASHI, ESQ.
930 Grand Concourse-Suite # 1E
Bronx, New York 10451
(917) 703-1742
(718) 585-400/FAX
marashi.legal@gmail.,com

/s/ *James I. Meyerson*_____
JAMES I. MEYERSON, ESQ.
5 Bryant Park-Suite # 820
New York, New York 10018
(212) 344-7474/Extension 129
(212) 344-4447/FAX
jimeyerson@yahoo.com
ATTORNEYS FOR PLAINTIFFS
BY:_____

63